# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

CHRISTOPHER WOOD,

    Petitioner,

vs.

DWIGHT NEVEN, et al.,

    Respondents.

Case No. 2:11-cv-01667-JAD-GWF

**ORDER**

Before the court are the first amended petition (#40), respondents' motion to dismiss (#47), petitioner's opposition (#48), and respondents' reply (#51). The court finds that the remaining grounds for relief in the first amended petition are either untimely or procedurally defaulted, and the court grants the motion.

On July 27, 2009, in state district court, petitioner agreed to plead guilty to possession of a firearm by an ex-felon and possession of stolen property. Petitioner further agreed that he qualified for treatment as a habitual criminal pursuant to Nev. Rev. Stat. § 207.010(1)(a), and that he be sentenced to prison for a minimum of six years and a maximum of twenty years. Ex. 4 (#41).[1] On that same day, the state district court accepted petitioner's plea, adjudicated him to be a habitual criminal, and sentenced him according to the agreement. Ex. 5 (#41). The notice of habitual

---

[1] Petitioner filed the exhibits in the court's docket at #41. A page preceding each exhibit states the correct number of each exhibit. On some of the exhibits, another exhibit number appears on the first page. Those markings are inapplicable. For example, exhibit 4, the guilty plea agreement, is marked as exhibit 10 on the first page.

criminality was filed later that day. Ex. 6 (#41). The judgment of conviction was entered on July 30, 2009. Ex. 17 (#41). Petitioner did not appeal directly from the judgment of conviction.

On July 22, 2010, petitioner filed a post-conviction habeas corpus petition in the state district court. Ex. 10 (#41). The state district court denied the petition on January 25, 2011. Ex. 21 (#41). Petitioner filed a notice of appeal on February 15, 2011. Ex. 22 (#41). The notice of entry of the state district court's order was filed on February 16, 2011. Ex. 23 (#41). Petitioner appealed, and the Nevada Supreme Court affirmed on September 15, 2011. Ex. 28 (#41). Remittitur issued on October 12, 2011. Ex. 30 (#41).

Petitioner then effectively commenced this action by mailing his proper-person petition (#5) to this court on October 5, 2011. The court directed petitioner to show cause why the action should not be dismissed as untimely. Order (#4). The court based its order upon petitioner's statement at page 1 of the original petition (#5) that the Nevada Supreme Court dismissed his post-conviction appeal on February 15, 2011. Petitioner's statement was incorrect: he filed his notice of appeal on that date, but the Nevada Supreme Court affirmed on September 15, 2011, and remittitur did not issue until after petitioner mailed his federal petition to this court. Petitioner filed a response (#8) that did not address his earlier error and that was otherwise not persuasive. The court dismissed the action. Order (#9).

Petitioner contacted private counsel, who filed a motion for appointment of counsel and a motion for correction of an error or reconsideration (#11). Counsel pointed out the error in the court's calculations. The court granted the motion, reinstated the action, appointed counsel to represent petitioner, and gave petitioner the opportunity to file an amended petition. Order (#17).

Before petitioner filed his amended petition, he moved to compel the respondents to produce the records of the prior convictions that were used to adjudicate petitioner as a habitual criminal (#26). The court granted the motion. Order (#38). Respondents went to the state district court, made copies of the prior judgments of convictions from the record of petitioner's criminal case, and filed them with this court. Notice (#39).

Petitioner then filed his first amended petition (#40) on January 7, 2013. The motion to dismiss (#47) followed.

**Timeliness**

Respondents first argue that grounds C, E(3), and F of the first amended petition (#40) are untimely because they do not relate back to the original petition (#5).

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). If the judgment is not appealed, then it becomes final 30 days after entry, when the time to appeal to the Nevada Supreme Court has expired. See Gonzalez v. Thaler, 132 S. Ct. 641, 653-54 (2012). See also Nev. R. App. P. 4(b). Any time spent pursuing a properly filed application for state post-conviction review or other collateral review does not count toward this one-year limitation period. 28 U.S.C. § 2244(d)(2). The period of limitation resumes when the post-conviction judgment becomes final upon issuance of the remittitur. Jefferson v. Budge, 419 F.3d 1013, 1015 n.2 (9th Cir. 2005). A prior federal habeas corpus petition does not toll the period of limitation. Duncan v. Walker, 533 U.S. 167, 181-82 (2001). Relation back, pursuant to Rule 15(c) of the Federal Rules of Civil Procedure, is allowed "[s]o long as the original and amended petitions state claims that are tied to a common core of operative facts . . . ." Mayle v. Felix, 545 U.S. 644, 664 (2005). Section 2244(d) is subject to equitable tolling. Holland v. Florida, 560 U.S. 631, 130 S. Ct. 2549, 2560 (2010). "[A] 'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Id. at 2562 (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)).

The judgment of conviction was entered on July 30, 2009. The judgment became final on August 31, 2009, when the time to appeal expired, taking into account that the time to appeal otherwise would have ended on a Saturday. See Nev. R. App. P. 26(a)(3). Petitioner filed his state

habeas corpus petition on July 22, 2010, 325 days later.  The one-year federal period of limitation was tolled while the state habeas corpus petition was pending.  Petitioner mailed his original petition (#5) to this court on October 5, 2011, before the Nevada Supreme Court issued its remittitur in the post-conviction appeal, and thus that petition was timely.  Petitioner filed his first amended petition (#40) on January 7, 2013, 453 days after the Nevada Supreme Court issued its remittitur on October 12, 2011.  A total of 778 non-tolled days passed between the finality of the judgment of conviction and the filing of the first amended petition.  The grounds in the first amended petition either need to relate back to the original petition, or petitioner must demonstrate equitable tolling to excuse the untimeliness of the first amended petition.

Ground C of the first amended petition (#40) is a claim that petitioner was sentenced in violation of the Fifth, Eighth, and Fourteenth Amendments because there was no affirmative showing at his sentencing hearing that he was represented by counsel or had waived representation by counsel in the prior proceedings that were used to justify habitual-criminal treatment.  At the end of ground 1 of the original petition, petitioner claimed that he did not stipulate to the validity of the prior convictions.  Petitioner presented a general allegation in his original petition, and he has provided more specific allegations in his amended petition.  In determining what the standard is for relation back in habeas corpus petitions, the Supreme Court cited with approval Mandacina v. United States, 328 F.3d 995 (8th Cir. 2003).  Felix, 545 U.S. at 664 n.7.  Mandacina held that when a timely petition presents general allegations—a failure to disclose potentially exculpatory evidence in that case—an amended petition relates back even if it alleges more specific information so long as the allegations refer to the same time and type of facts.  328 F.3d at 1000-01.  The court sees no difference between Mandacina and this case.  The time and type of facts are the same—what the prosecution should have proven at the sentencing hearing—and the more specific allegations in the amended petition do not change those facts.  Ground C relates back to the original petition (#5).

Ground E(3) of the amended petition is a claim that counsel provided ineffective assistance because counsel deprived petitioner of a direct appeal.  There is no corresponding claim in the original petition.  Instead, petitioner points to his answers to questions on the petition form as to why he did not raise some grounds on direct appeal.  E.g., Petition, at 4 (#5).  The court does

liberally construe pro se claims; however, the court does not act as petitioner's advocate. It will not examine the petition for other grounds that petitioner possibly could have raised, and it will not write those grounds on petitioner's behalf. Ground E(3) does not relate back to the original petition.

Ground F is a claim of cumulative error. To the extent that it includes the claim in ground E(3), it is untimely.

Petitioner argues that equitable tolling excuses the untimeliness of the grounds. His argument is based upon a stop-the-clock model. "[T]he one-year statute of limitations for filing a habeas petition may be equitably tolled if 'extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time.' The prisoner must show that the 'extraordinary circumstances' were the cause of his untimeliness." Spitsyn v. Moore, 345 F.3d 796, 799 (9th Cir. 2003) (citations omitted).

> [T]he prisoner must show that the "extraordinary circumstances" were the but-for and proximate cause of his untimeliness. . . . It will normally be much more difficult for a prisoner to demonstrate causation where he encounters the "extraordinary circumstances" in the beginning or middle of the limitations period than where he encounters them at the end of limitations period. This is the case because, if the prisoner is diligently pursuing his habeas petition, the one-year limitations period will ordinarily give him ample opportunity to overcome such early obstacles.

Allen v. Lewis, 255 F.3d 798, 800 (9th Cir. 2001) (per curiam) (citations omitted). The Ninth Circuit has not applied a stop-the-clock rule for equitable tolling of § 2244(d). Instead, it looks upon equitable tolling as an equitable concept. As noted in Allen, a petitioner must demonstrate causation as part of the requirement that he is pursuing his remedies diligently. See, e.g., Waldron-Ramsey v. Pacholke, 556 F.3d 1008 (9th Cir. 2009); Gaston v. Palmer, 417 F.3d 1030, 1034 (9th Cir. 2005), amended by 447 F.3d 1165 (9th Cir. 2006); Spitsyn, 345 F.3d at 799. In Lott v. Mueller, 304 F.3d 918 (9th Cir. 2002), the court determined that equitable tolling might have been warranted, but it applied the same causation rule which it had adopted in Allen, and the court remanded for further argument on whether equitable tolling was warranted. 304 F.3d at 922-26.[2]

---

[2] Judge McKeown's argument for a stop-the-clock rule did not have majority support. 304 F.3d at 926-27 (McKeown, J, concurring in the judgment).

-5-

1    Petitioner's first argument for equitable tolling is that his judgment of conviction would
2 have become final much later if his counsel had appealed. The court is not persuaded. The issue is
3 not to determine how long a direct appeal would have taken, and then subtract that time from the
4 time not tolled by 28 U.S.C. § 2244(d)(2). Rather, the issue is when petitioner learned or could
5 have learned that counsel did not file a direct appeal. Petitioner alleges in the amended petition
6 (#40) that counsel refused to file a direct appeal. In the state habeas corpus petition, petitioner
7 alleges that upon being sentenced his counsel did not tell him of any way to appeal, even after he
8 asked her what the next step was. See Ex. 10 (#40). Apparently, petitioner learned at or very
9 quickly after sentencing, and before the time to appeal expired, that counsel had not filed a direct
10 appeal. Therefore, the lack of appeal was not an extraordinary circumstance that prevented him
11 from filing the amended petition (#40) on time.

12    Second, petitioner argues that this court's dismissal of the action as untimely, and then this
13 court's reinstatement of the action, made it impossible for him to file the amended petition on time.
14 If petitioner filed an amended petition promptly after reinstatement of the action, then it would have
15 been a persuasive argument. However, petitioner did not file an amended petition for another nine
16 months. The reason for that delay is petitioner's next argument.

17    Third, petitioner argues that time was lost while he was trying to compel respondents to
18 provide copies of the prior judgments of conviction. The court is not persuaded by petitioner's
19 argument that the prosecution did not provide copies of these prior judgments at the sentencing
20 hearing. At the hearing, the following exchange occurred:

21    MR. RUTLEDGE [prosecutor]: And if I could, I have copies of his Nevada case and his Ohio cases to be filed as an exhibit for sentencing.
22
      THE COURT: All right. That would be great. I'll take that.
23
24 Ex. 5, at 4 (#41). Later:
25    THE COURT: Ms. Hatcher [defense counsel], I have a certified copy of the Judgment of Conviction from Case C252440, attempt burglary; two counts of breaking and entering in
26    the State of Ohio under Case 1995 CR 0552, both felonies.
27    MR. RUTLEDGE: In that same packet from Ohio was also case 1996 CR 0225 for receiving stolen property and—
28

1    THE COURT: And breaking and entering, also State of Ohio; and 1995 CR 0027, one count of breaking and entering which appears to be a felony.

2

3    Ms. Hatcher, you've reviewed that and acknowledge that he is eligible for and therefore agreeing to be treated as a habitual criminal?

4    MS. HATCHER: Yes, Your Honor.

5    THE COURT: And you concur that he's—he has agreed to be treated as such?

6    MS. HATCHER: Yes.

7    THE COURT: All right. I'm going to find that the defendant's pleas of guilty to Counts II and XI are freely and voluntarily made, find that he understands the nature of the offenses and the consequence of his plea.

8

9    I'm going to adjudge him guilty of Count II, possession of firearm by ex-felon, and Count XI, possession of stolen property, both felonies.

10

State do you wish to be heard at all?

11

MR. RUTLEDGE: No, Your Honor.

12

THE COURT: I will make the Judgments of Convictions exhibits for sentencing purposes.

13

14  Id. at 11-12. Petitioner argues that the transcript shows that the prior judgments of conviction were

15  not received by the state district court. That argument is plainly incorrect based upon the excerpts

16  of the transcript quoted above. Petitioner's efforts to obtain copies of these prior judgments of

17  convictions consisted of contacting counsel for respondents, the prosecutor, and counsel for

18  respondents again. Petitioner then filed his motion to compel (#26), which took three months to

19  litigate and another couple of weeks for respondents to file copies of the prior judgments of

20  conviction. There is no indication in any document filed with this court that petitioner went to the

21  state courthouse and tried to obtain copies of the prior judgments from the case file.[3] Consequently,

22

23  [3]Respondents obtained copies of the prior judgments of conviction by contacting the Eighth Judicial District Court. Notice (#39), Ex. 1. Petitioner counters that the copies are not marked as exhibits by the Eighth Judicial District Court, that the judge never said that the copies were marked or admitted, and that there is no proof that counsel for respondents actually obtained the copies from the Eighth Judicial District Court. This court is not concerned with compliance with state law on evidence unless the error made the proceedings fundamentally unfair. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). The transcript of the sentencing hearing shows that the judge had all the information required for a habitual-criminal adjudication, and thus the matters that petitioner describes did not make the hearing fundamentally unfair. As for proof that counsel for respondents obtained the copies of the prior judgments from the Eighth Judicial District Court, counsel has provided a declaration under of penalty of perjury that he did just that. If the matter was of such

24

25

26

27

28

-7-

1  the court cannot conclude that petitioner's lack of copies of the prior judgments of conviction was
2  an extraordinary circumstance beyond his control that prevented him from filing a timely amended
3  petition.

4  Petitioner argues that his lack of education also was an extraordinary circumstance. At the
5  sentencing hearing, petitioner told the court that he had twelve years of education and some trade
6  schooling, and that he reads, writes, and understands English. Ex. 5, at 5 (#41). Petitioner also
7  filed a timely state habeas corpus petition and a timely federal habeas corpus petition on his own.
8  Whatever limitations might exist with his education, they did not prevent him from filing the
9  amended petition on time.

10  Petitioner also argues that actual innocence can excuse the operation of the statute of
11  limitation. Actual innocence can excuse operation of the statute of limitations. McQuiggin v.
12  Perkins, 133 S. Ct. 1924, 1928 (2013). "'[A] petitioner does not meet the threshold requirement
13  unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably,
14  would have voted to find him guilty beyond a reasonable doubt.'" Id. (quoting Schlup v. Delo, 515
15  U.S. 298, 329 (1995)). "'[A]ctual innocence' means factual innocence, not mere legal
16  insufficiency." Bousley v. United States, 523 U.S. 614, 623 (1998).

17  Petitioner cannot meet this standard. First, petitioner argues that the sentencing of him as a
18  habitual criminal was incorrect because he stipulated that he was a habitual criminal and did not
19  stipulate to the validity of the prior convictions. The court is not persuaded because this is an
20  argument of legal insufficiency, not actual innocence. See Bousley, 523 U.S. at 623.

21  Petitioner also argues that the state district court lacked jurisdiction to sentence petitioner as
22  a habitual criminal because the prosecution did not file the requisite notice at least fifteen days
23  before sentencing. The Nevada Supreme Court has held that unless a notice of intent to seek
24  treatment as a habitual criminal is filed formally, a district court is without jurisdiction to adjudicate
25  a person as a habitual criminal. Grey v. State, 178 P.3d 154, 163-64 (Nev. 2008). See also Nev.

27  importance to petitioner, his counsel could have contacted the state district court and either verified
    or disproved the declaration of respondents' counsel. Nothing in the opposition (#48) indicates that
28  petitioner's counsel did that, and this court accepts the declaration of respondents' counsel as true.

1  Rev. Stat. § 207.016(2). However, Grey only discusses the filing of the notice. Grey does not
2  discuss the timing of the notice. Nothing in Grey holds that a district court is without jurisdiction if
3  a notice is filed less than fifteen days before sentencing. In petitioner's case the notice was filed on
4  the date of sentencing. Ex. 6 (#41). In his state habeas corpus petition, petitioner challenged the
5  lack of a timely notice of intent to seek habitual-criminal treatment. See Ex. 10 (#41). The Nevada
6  Supreme Court did not treat those claims as jurisdictional claims; instead, the Nevada Supreme
7  Court ruled that the claims were barred by Nev. Rev. Stat. § 34.810(1)(a). Ex. 28, at 3 (#41). The
8  Nevada Supreme Court also determined that counsel did not provide ineffective assistance by
9  waiving the requirement of a timely notice. Ex. 28, at 1-2 (#41). The Nevada Supreme Court is the
10 final word on interpretations of state law. Harmonizing Grey and petitioner's own habeas corpus
11 appeal, it appears that the filing of a notice of intent to seek habitual-criminal treatment is
12 jurisdictional, but the timing of that notice is not jurisdictional and can be waived. Consequently,
13 the lack of a timely notice does not mean that petitioner is actually innocent of the habitual-criminal
14 sentence enhancement.

15        Third, petitioner argues that the habitual criminal enhancement was applied without a
16 showing that petitioner was represented by counsel or had waived counsel in the prior proceedings.
17 This argument is incorrect. The copies of the prior convictions in the record show that petitioner
18 was represented by counsel at all prior proceedings. See Notice (#39). Petitioner has presented
19 nothing to disprove the facial validity of those prior judgments of conviction. Consequently,
20 petitioner has not proven that he is actually innocent.

### Exhaustion

22        Respondents next argue that grounds C, E(3), and F are unexhausted. Before a federal court
23 may consider a petition for a writ of habeas corpus, the petitioner must exhaust the remedies
24 available in state court. 28 U.S.C. § 2254(b). To exhaust a ground for relief, a petitioner must
25 fairly present that ground to the state's highest court, describing the operative facts and legal theory,
26 and give that court the opportunity to address and resolve the ground. See Duncan v. Henry, 513
27 U.S. 364, 365 (1995) (per curiam); Anderson v. Harless, 459 U.S. 4, 6 (1982).

28

"[A] petitioner for habeas corpus relief under 28 U.S.C. § 2254 exhausts available state remedies only if he characterized the claims he raised in state proceedings specifically as federal claims. In short, the petitioner must have either referenced specific provisions of the federal constitution or statutes or cited to federal case law." Lyons v. Crawford, 232 F.3d 666, 670 (9th Cir. 2000) (emphasis in original), amended, 247 F.3d 904 (9th Cir. 2001). Citation to state case law that applies federal constitutional principles will also suffice. Peterson v. Lampert, 319 F.3d 1153, 1158 (9th Cir. 2003) (en banc). "The mere similarity between a claim of state and federal error is insufficient to establish exhaustion. Moreover, general appeals to broad constitutional principles, such as due process, equal protection, and the right to a fair trial, are insufficient to establish exhaustion." Hiivala v. Wood, 195 F.3d 1098, 1106 (9th Cir. 1999) (citations omitted).

Ground C of the first amended petition (#40) is a claim that petitioner was sentenced in violation of the Fifth, Eighth, and Fourteenth Amendments because there was no affirmative showing at his sentencing hearing that he was represented by counsel or had waived representation by counsel in the prior proceedings that were used to justify habitual-criminal treatment. At the end of ground 1 of the original petition, petitioner claimed that he did not stipulate to the validity of the prior convictions. "[N]ew factual allegations do not render a claim unexhausted unless they 'fundamentally alter the legal claim already considered by the state courts.'" Chacon v. Wood, 36 F.3d 1459, 1468 (quoting Vasquez v. Hillery, 474 U.S. 254, 260 (1986)). The operative fact of this claim was the prosecution's failure to prove the validity of the prior judgments of conviction. The additional elaboration of just what the prosecution failed to prove does not alter the claim. Ground C is exhausted.

Ground E(3) of the amended petition is a claim that counsel provided ineffective assistance because counsel deprived petitioner of a direct appeal. Petitioner presented no such claim in the state courts. Instead, petitioner argues that if he returned to state court, the claim would be barred pursuant to Nev. Rev. Stat. § 34.810(1)(a), because all of his other claims not related to either the voluntariness of his plea or the effectiveness of counsel in entering the plea. The court does not accept this futility argument. First, the court is not convinced that § 34.810(1)(a) has any applicability to claims of ineffective assistance of counsel that arise after entry of a plea of guilty.

Second, § 34.810(1)(a) has the same cause-and-prejudice standard for excusing its application that this court uses for excusing a procedural default. On the one hand, this court will not guess what the Nevada Supreme Court's determination on the cause-and-prejudice question would be. On the other hand, if petitioner is conceding that he cannot meet the cause-and-prejudice standard to excuse the procedural bar of § 34.810, he necessarily is conceding that he also cannot meet the cause-and-prejudice standard to excuse a procedural default of the claim in federal court. The result would be that the court would find ground E(3) to be procedurally defaulted. Instead, as an alternative to the finding that ground E(3) is untimely, the court finds that ground E(3) is unexhausted.

Ground F is a claim of cumulative error. Petitioner did not present any such claim to the state courts. Petitioner cites Kwan Fai Mak v. Blodgett, 970 F.2d 614 (9th Cir. 1992), in support of his argument that the court nonetheless must consider an unexhausted cumulative-error claim. However, nothing in Kwan Fai Mak stands for any such proposition. In contrast, in Wooten v. Kirkland, 540 F.3d 1019 (9th Cir. 2008), the court of appeals upheld the district court's denial of a stay of proceedings to allow the petitioner to return to state court to exhaust a claim of cumulative error. Wooten necessarily implies that a claim of cumulative error must be exhausted in the state courts before a federal court can consider the claim.

Respondents also argue that all of petitioner's Eighth Amendment claims are not exhausted because petitioner never presented that legal theory to the state courts. The court agrees. However, Grounds A, B, and C are procedurally defaulted, as explained below, and ground E(3) is untimely.[4] Consequently, the failure to exhaust the Eighth Amendment claims is redundant.

**Procedural Default**

Respondents argue that grounds A, B, and C are procedurally defaulted. A federal court will not review a claim for habeas corpus relief if the decision of the state court regarding that claim

---

[4]The court makes no comment on whether the Eighth Amendment is applicable to any of these grounds.

-11-

rested on a state-law ground that is independent of the federal question and adequate to support the judgment. Coleman v. Thompson, 501 U.S. 722, 730-31 (1991).

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

Id. at 750; see also Murray v. Carrier, 477 U.S. 478, 485 (1986).

To demonstrate cause for a procedural default, the petitioner must "show that some objective factor external to the defense impeded" his efforts to comply with the state procedural rule. Carrier, 477 U.S. at 488. To show prejudice, "[t]he habeas petitioner must show 'not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" Carrier, 477 U.S. at 494 (quoting United States v. Frady, 456 U.S. 152, 170 (1982)) (emphasis in original).

In the appeal from the denial of the state habeas corpus petition, the Nevada Supreme Court held:

> Finally, appellant raised various claims that the district court erred by sentencing him as a habitual criminal. These claims fell outside the scope of claims permissible in a post-conviction petition for a writ of habeas corpus challenging a judgment of conviction based upon a guilty plea. NRS 34.810(1)(a). Therefore, the district court did not err in denying those claims.

Ex. 28, at 3 (#41). Section 34.810 states, in relevant part:

> 1. The court shall dismiss a petition if the court determines that:
>
> (a) The petitioner's conviction was upon a plea of guilty or guilty but mentally ill and the petition is not based upon an allegation that the plea was involuntarily or unknowingly entered or that the plea was entered without effective assistance of counsel.

Petitioner argues that § 34.810(1)(a) is not an adequate procedural bar because the Nevada Supreme Court applies it inconsistently. A state court's use of discretion to address a claim that would otherwise be procedurally barred does not make that state-law procedural bar inadequate for the purposes of federal procedural default. See Walker v. Martin, 131 S. Ct. 1120, 1128 (2011); Beard v. Kindler, 558 U.S. 53, 60-61 (2009). Petitioner notes that the Nevada Supreme Court allows a petitioner to raise a claim that counsel deprived the petitioner of a direct appeal, but such a claim is beyond the scope of the text of the statute. Of the cases that petitioner cites, in only two

did the Nevada Supreme Court address the merits of claims. In Hodges v. State, 78 P.3d 67, 68-70 (Nev. 2003), the Nevada Supreme Court addressed the merits of the claim that the prosecution had failed to prove the validity of the prior convictions because the petitioner had argued that the failure made his guilty plea involuntary or unknowing. In other words, the claim was permissible within the meaning of the statute. In Toston v. State, 267 P.3d 795, 798 (Nev. 2011), the Nevada Supreme Court applied § 34.810(1)(a) to many claims, but it did reach the merits of the appeal-deprivation claim. In effect, petitioner has noted only one instance in which the Nevada Supreme Court reached the merits of a claim that arguably is barred by § 34.810(1)(a).

If the language of § 34.810(1)(a) does bar claims of ineffective assistance of counsel for depriving a person of a direct appeal from a judgment due to a guilty plea, then the Nevada Supreme Court's use of discretion to address such claims in state habeas corpus proceedings is appropriate. Such a claim may only be raised in a habeas corpus petition. First, Nevada generally requires ineffective-assistance claims to be raised in a habeas corpus petition, not on direct appeal. See Gibbons v. State, 634 P.2d 1214 (Nev. 1981). Second, the claim itself requires that there was no direct appeal. An appeal-deprivation claim in a guilty-plea case might have potential merit, because there are some issues that a person can raise on direct appeal from a judgment pursuant to a guilty plea. Application of § 34.810(1)(a) to appeal-deprivation claims arising out of guilty pleas would mean that those claims always would be barred in state court and then procedurally defaulted in federal court. That would come close to a situation in which "exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question." Lee v. Kemna, 534 U.S. 362, 376 (2002). Consequently, the use of discretion to avoid such a situation does not make § 34.810(1)(a) inadequate for the purposes of procedural default.[5]

The court agrees with respondents that § 34.810(1)(a) acts to procedurally default grounds A, B, and C. Petitioner has presented the grounds to the Nevada Supreme Court through his state habeas corpus petition. To overcome the procedural bar, petitioner needed to show cause and

---

[5] The court is not convinced that a strict reading of § 34.810(1)(a) would apply to an appeal-deprivation claim. An appeal-deprivation claim arises both after entry of the plea and after entry of the judgment, and thus appears to be beyond the contemplation of § 34.810(1)(a).

1  prejudice. See Nev. Rev. Stat. § 34.810(3). Petitioner argued that counsel deprived him of a direct
2  appeal, where he could have raised those grounds. See Ex. 10, at 3 (#41). The Nevada Supreme
3  Court was not persuaded. If the court were to hold under these circumstances that § 34.810(1)(a)
4  did not act as a procedural default, but rather acted as an improper method of presenting a claim to
5  the state courts, then grounds A, B, and C would be unexhausted. Petitioner would need to return to
6  state court, and the Nevada Supreme Court would reject his argument again.[6] Petitioner would
7  return to this court, and again grounds A, B, and C would be unexhausted. Theoretically, the cycle
8  would never end. Instead, the court finds that grounds A, B, and C are procedurally defaulted.
9  Petitioner argues that the ineffective assistance of counsel, in not filing an appeal, is cause to
10 excuse the default. However, that is ground E(3), which is unexhausted and unable to act as cause.
11 Murray v. Carrier, 477 U.S. 478, 488-89 (1986).
12 Petitioner also cannot show prejudice. The transcript reflects that petitioner waived the 15-
13 day requirement for the notice of habitual criminality. Ex. 5, at 4 (#41), and that the district court
14 looked at the prior convictions and determined that they qualified under Nev. Rev. Stat. § 207.010.
15 Id., at 4, 11-12. The copies of the prior convictions always were in the district court's record. The
16 copies show that petitioner was represented by counsel in all those prior proceedings. If there are
17 other constitutional infirmities with those prior convictions, petitioner has not alleged what they are
18 and the court does not perceive any from the convictions themselves.
19 Petitioner also argues that actual innocence and a miscarriage of justice should bypass the
20 procedural default. The court has considered and rejected those arguments in its discussion of the
21 untimeliness of ground E(3), above.

22
23
24
25
26  [6]Ground E(3), which the court has found in the alternative is not exhausted, is in a different situation. This court will not guess how the Nevada Supreme Court would rule upon petitioner's arguments for cause and prejudice to excuse any procedural bars for ground E(3), because petitioner
27  never has presented that ground to the Nevada Supreme Court. For grounds A, B, and C, the court already knows how the Nevada Supreme Court ruled upon petitioner's arguments for cause and
28  prejudice, and there is no reason for the court to expect a different result if petitioner tries again.

-14-

**Other Arguments**

The court will not address respondents' other arguments: that ground A is barred by petitioner's guilty plea, and that grounds B and C are belied by the record, except as mentioned below.

**Conclusion**

The first amended petition (#40) contained six grounds, designated A through F, with ground E divided into three parts. Grounds A, B, and C are procedurally defaulted. Petitioner withdrew grounds D and E(2). Notice (#44). Ground E(1) is not actually a claim for relief; it is a statement of the standards for ineffective assistance of counsel. Ground E(3) is untimely; in the alternative, it is unexhausted. Ground F is a claim of cumulative error. Because all of the other grounds have been withdrawn or are being dismissed, nothing remains of ground F.

To appeal the denial of a petition for a writ of habeas corpus, Petitioner must obtain a certificate of appealability, after making a "substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c).

> Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy §2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. The issue becomes somewhat more complicated where, as here, the district court dismisses the petition based on procedural grounds. We hold as follows: When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

Slack v. McDaniel, 529 U.S. 473, 484 (2000); see also James v. Giles, 221 F.3d 1074, 1077-79 (9th Cir. 2000).

The court has reviewed the grounds for relief and the procedural reasons why they are being dismissed. Reasonable jurists might find that ground E(3) states a valid claim of the denial of a constitutional right. Reasonable jurists might also debate the court's ruling that equitable tolling is not warranted for the untimeliness of ground E(3). The court will grant a certificate of appealability on that ground. Ground A does not state a valid claim of the denial of a constitutional right. In the

court's discussion of petitioner's argument actual innocence, the court noted that state law seems to require a notice of habitual criminality be filed, but the timeliness of that notice can be waived. Petitioner waived the timeliness at his sentencing hearing. Grounds B and C are based upon claims that the state court never received certified copies of prior judgments of conviction, but respondents' notice (#39) shows the opposite. Reasonable jurists also would not find debatable the court's conclusion that grounds A, B, and C are procedurally defaulted. Finally, reasonable jurists would not find debatable this court's conclusion that nothing remains of ground F, the cumulative-error claim, because all of the other grounds are dismissed or withdrawn.

IT IS THEREFORE ORDERED that respondents' motion to dismiss (#47) is **GRANTED**. This action is **DISMISSED** with prejudice.

IT IS FURTHER ORDERED that a certificate of appealability is **GRANTED** on whether the court was correct in its ruling that equitable tolling is not warranted for the untimeliness of ground E(3).

DATED: February 24, 2014.

_____
JENNIFER A. DORSEY
United States District Judge